UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA TOYA C WARD,<br><br>                    Plaintiff,<br><br>          v.<br><br>WELLS FARGO HOME MORTGAGE,<br><br>                    Defendant. | Case No.  14-cv-00887-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 7 |

## I.     INTRODUCTION

Plaintiff La Toya C. Ward ("Plaintiff") brought suit for rescission of a deed of trust and related claims against Defendant Wells Fargo Home Mortgage ("Wells Fargo").[1] Wells Fargo removed the action to federal court on the basis of diversity. *See* 28 U.S.C. § 1332; Dkt. No. 1 at 1–2. Presently before the Court is Wells Fargo's motion to dismiss Plaintiff's Complaint ("Motion"). All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Court finds this matter appropriate for decision without oral argument and the hearing set for May 9, 2014 is VACATED. *See* Civ. L. R. 7-1(b). For the reasons set out below, the Motion is GRANTED. The Complaint is DISMISSED with leave to amend as described below.

## II.     BACKGROUND

On March 12, 2004, Plaintiff took out loans from Wells Fargo for $471,062 and $28,938, both of which were secured by deeds of trust against a single-family home located at 62 Sarcedo Way in American Canyon, California ("Property"). *See* Def.'s Req. for Judicial Notice in Supp. of

---

[1] According to Wells Fargo, Wells Fargo Bank, N.A. is the successor by merger to Wells Fargo Home Mortgage. *See* Dkt. No. 7.

United States District Court<br>Northern District of California

1   Def.'s Mot. to Dismiss ("RJN"), Exs. B, C. On or about March 9, 2005, Plaintiff refinanced those

2   loans with a loan from World Savings Bank for $584,000, which was also secured by a deed of

3   trust against the Property. *See id.* Ex. D; Compl. Ex. G. On April 6, 2005, substitutions of trustee

4   were recorded in both of Plaintiff's March 2004 loans, removing Chicago Title Insurance

5   Company as the trustee and substituting in Wells Fargo Bank, N.A. *See* RJN Exs. E–F. On

6   December 21, 2005, Plaintiff refinanced again with a loan from Wells Fargo of $630,000, which

7   was also secured by a deed of trust against the Property. *See id.* Ex. A. These documents were all

8   recorded in the Official Records of the County of Napa. *Id.* Exs. A–G.

9       At some point, Plaintiff began having difficulty making her loan payments and apparently

10  sought assistance from Wells Fargo. What followed was a series of communications between

11  Wells Fargo and Plaintiff regarding potential modifications of her loans.[2]

12      On August 7, 2009, Plaintiff and Wells Fargo entered into a "Special Forbearance

13  Agreement" that required Plaintiff to make monthly payments of $2,553.07 from August to

14  October 2009. *See* Compl. Ex. C at 1–2.

15      On December 22, 2009, Plaintiff and Wells Fargo entered into a "Loan Modification

16  Agreement," which required Plaintiff to make monthly payments of $2,533.07 from January 2010

17  to January 2011, after which "the original terms regarding the determination of the Interest rate

18  and monthly payment will change in accordance with the terms of the Note." *See id.* at 3–6. *See*

19  *also id.* Ex. B at 1. That agreement also included a "Notice of No Oral Agreements." *See id.*

20      On June 27, 2011, Wells Fargo sent Plaintiff a letter with the subject "Payment

21  arrangement agreement" stating that "[a]s discussed we have granted you the payment

22  arrangement listed below," which required Plaintiff to make monthly payments of $4,082.55 from

23  August 2011 to January 2012, with a balloon payment of $11,722.38 in February 2012. *See id.* Ex.

24  D. Attached to this agreement was a "Special Forbearance Agreement," which Plaintiff signed on

25

26  _____

27  [2] Although certain documents that appear to be written forbearance agreements or loan
    modification agreements are attached to the Complaint and Plaintiff's reply, it is not entirely clear
    whether each agreement applies to one of Plaintiff's March 2004 loans, both of those loans, the
28  December 2005 refinance loan, or some other loan.

1   July 6, 2011. *See id.*

2       On November 10, 2011, Wells Fargo sent a letter to Plaintiff discussing her loan

3   modification file. *See id.* Ex. B. The letter described the review of Plaintiff's file that had occurred

4   leading up to the execution of the June 2011 Special Forbearance Agreement. *See id.* The letter

5   also acknowledged Plaintiff's statement that someone at Wells Fargo had instructed her to stop

6   remitting payments while a "piggy back modification approved on [her] loan was in the

7   'finalization' process," but stated that it was not Wells Fargo's policy to instruct borrowers not to

8   make payments. *See id.* The letter also stated that Wells Fargo had received Plaintiff's request to

9   submit additional information due to changed financial circumstances, but Plaintiff's case was

10  being closed because she had indicated to a Wells Fargo representative that she would not be able

11  to provide the financial information in the timeframe requested by Wells Fargo. *See id.*

12      On May 18, 2012, Wells Fargo initiated a review of one of Plaintiff's loans. *See* Compl.

13  Ex. A at 3. However, the documentation was apparently incomplete and Wells Fargo did not

14  receive further documentation until October 30, 2012. *See id.* The result of this review was that

15  Wells Fargo was "unable to approve another modification . . . in accordance with investor

16  limitations." *See id.*

17      On October 30, 2012, Wells Fargo initiated a review for workout options for another one

18  of Plaintiff's loans. *See id.* at 2. The next day, Wells Fargo informed Plaintiff that her loan was not

19  eligible for the Home Affordable Modification Program because her loan was in a mortgage

20  backed security pool that did not allow permanent changes. *See id.* Wells Fargo reviewed

21  Plaintiff's financial documentation and completed a workout review on December 24, 2012. *See*

22  *id.* Wells Fargo concluded that because Plaintiff was not "in imminent default," Wells Fargo was

23  prevented by investor guidelines from offering her a loan modification. *See id.* Accordingly, Wells

24  Fargo denied the modification request. *See id.*

25      On April 1, 2013, Wells Fargo assigned its interest in Plaintiff's December 2005 loan to

26  HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation,

27  Mortgage Pass-Through Certificates Series 2006-AR10 ("HSBC"). *See* RJN Ex. G

28  ("Assignment"). The Assignment was executed by Alissa Doepp, "Vice President Loan

United States District Court
Northern District of California

Documentation" for Wells Fargo, and it was recorded on April 4, 2013. *See id.*

On October 16, 2013, Wells Fargo sent a letter to Plaintiff indicating her loan was in default for failure to make payments due. *See* Compl. Ex. J; Pl.'s Opp'n ("Opp'n"), Ex. A. The letter stated that Plaintiff's default was in the amount of $19,012.95. *Id.* The letter further stated that to avoid the possibility of acceleration of her loan, Plaintiff would need to pay the amount due on or before November 20, 2013. *Id.* The letter also explained that if acceleration occurred, foreclosure proceedings would follow. *Id.*

On October 30, 2013, Wells Fargo sent a letter to the "Office of the Comptroller of the Currency" that apparently responded to a request for additional information on Plaintiff's loans, including what steps Wells Fargo had taken to try to reach an agreement with Plaintiff regarding her apparent default. *See* Compl. Ex. A.

On December 31, 2013, Wells Fargo sent a letter to Plaintiff indicating that her loan file had been referred to an attorney with instructions to begin foreclosure proceedings. Opp'n Ex. B. The letter further indicated that the entire amount of the loan was due and payable. *Id.*

Plaintiff's Complaint alleges: (1) rescission, mistake, and void agreement, (2) fraudulent inducement, (3) fraudulent concealment, (4) intentional misrepresentation, (5) negligent misrepresentation, (6) violation of section 2923.5 of the California Civil Code, (7) violation of the Unfair Competition Law, section 17200 of the California Business and Professions Code *et seq.*, (8) breach of contract, (9) slander of title, (10) declaratory relief, (11) promissory estoppel, (12) breach of implied covenant of good faith and fair dealing, and (13) institutional bad faith. Wells Fargo moves to dismiss all claims asserted against it.

## III.   JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a general rule, the court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *United States v. Corinthian*

United States District Court
Northern District of California

*Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). However, the court may consider unattached evidence on which the complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colls.*, 655 F.3d at 999 (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). In addition, the court may take judicial notice of "matters of public record," but not facts that may be "subject to reasonable dispute." *Corinthian Colls.*, 655 F.3d (citing *Lee*, 250 F.3d at 689).

Defendant requests judicial notice of seven publicly recorded documents: the deeds of trust secured by the Property, substitutions of trustee related to those previous deeds of trust, and the Assignment. *See generally* RJN. Plaintiff does not object to judicial notice of the documents.

Judicial notice of the existence and content of these documents, but not the truth of any facts stated therein, is proper under Federal Rule of Evidence 201(b) because the authenticity of the documents is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See Zapata v. Wells Fargo Bank, N.A.*, C 13-04288 WHA, 2013 WL 6491377, at *5 (N.D. Cal. Dec. 10, 2013) (citing *Castillo v. Wachovia Mortg.*, No. 12-0101 EMC, 2012 WL 1213296, at *1 n.2 (N.D. Cal. Apr. 11, 2012)).

## IV.   LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the nonmoving party." *arks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Complaints drafted by *pro se* plaintiffs are construed liberally to give the plaintiff the benefit of any doubt. *Hebbe v.*

United States District Court
Northern District of California

5

1   *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). Nonetheless, the factual allegations

2   of a complaint must be definite enough to "raise a right to relief above the speculative level on the

3   assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

4       "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear

5   . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*,

6   316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

7   However, "[l]eave to amend need not be granted when an amendment would be futile." *In re*

8   *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

9   **V.      ANALYSIS**

10       Plaintiff brings thirteen causes of action in her Complaint. Wells Fargo moves to dismiss

11   the Complaint under Rule 12(b)(6). For the reasons explained below, the Motion is GRANTED

12   and the Complaint is DISMISSED with leave to amend as described below.

13       **A.      Rescission, Mistake, and Void Agreement**

14       Section 1989(b)(1) of the California Civil Code allows a party to rescind a contract under

15   certain circumstances, including mistake or fraud. Section 1691 requires that a party give notice of

16   his or her intent to rescind and "[r]estore to the other party everything of value which he has

17   received from him under the contract or offer to restore the same upon condition that the other

18   party do likewise." Cal. Civ. Code § 1691. In the mortgage context, a plaintiff "must at least allege

19   that she has offered to tender to support a claim for equitable rescission under section 1691."

20   *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 880 (N.D. Cal. 2010).

21       Here, Plaintiff alleges that the loans into which she entered with Wells Fargo were "based

22   on the mistaken belief that they would remain in a borrower/lender relationship." Compl. ¶ 117.

23   Plaintiff alleges that she received far fewer benefits from her loan agreement than she thought she

24   would receive because "[i]nstead of a lender who had full authority to deal with the contractual

25   relationship and the economic value to the lender, the Plaintiff received a relationship with a party

26   who lacked the full authority of the lender and lacked the economic incentive to permanently

27   modify the loan rather than pursue foreclosure." *Id.* ¶ 119. Plaintiff alleges that she "lost the right

28   to even know who had the right to collect on the [note] and to foreclose since securitization and

United States District Court
Northern District of California

6

the use of MERS [Mortgage Electronic Registration Systems, Inc.] makes it impossible to determine who [Plaintiff's] 'lender' really is . . . ." *Id.* ¶ 121. Plaintiff alleges that this constitutes a material mistake in the formation of her contract and demands rescission of the loan or a declaration that it is unenforceable. *Id.* ¶ 123.

Wells Fargo argues that the December 2005 deed of trust expressly provides that Wells Fargo could sell the underlying note, or a partial interest in the note, one or more times without prior notice to Plaintiff. *See* Mot. at 4–5 (citing RJN Ex. A ¶ 20). Wells Fargo also argues that the claim is time-barred because, in California, a rescission claim based on a written contract has a four-year statute of limitations. *See* Mot. at 5 (citing Cal. Code Civ. Proc. § 337). Wells Fargo also argues that Plaintiff has not proffered tender as required to rescind a deed of trust. *See id.*

In her opposition, Plaintiff argues that even if she agreed that Wells Fargo could sell the interest in the loan, "Plaintiff deserves notice of this transaction." Opp'n at 3. She argues that she "only found out about this transaction when deciding on a loan modification," and that "[t]his type of predatory lending practice carries merit." *Id.* Plaintiff argues that her claim is not time-barred because she "was not aware there was ever a breach of contract" and when she was entered into the loan, she was not put "on notice that the note or security interest would be sold to a pool of investors that would deny her rights afforded to her from government programs." *Id.*

The Court agrees with Wells Fargo. The December 2005 deed of trust provides that the note may be sold without notice to Plaintiff. *See* RJN Ex. A ¶ 20. Plaintiff appears to concede this fact. *See* Pl.'s Opp'n at 3. Her assertions that she nonetheless "deserve[d]" notice of such transactions are contrary to the express terms of the deed of trust, and they are not supported by any authority. *See id.* Similarly, Plaintiff's argument that she was not ever aware of a breach of contract is insufficient to toll the statute of limitations. *See* Cal. Code Civ. Proc. § 337. Further, although Plaintiff invokes the Restatement of Contracts (Second) rather than California law, the Court notes that she has not proffered tender as required for rescission under the California Civil Code. *See Davenport*, 725 F. Supp. 2d at 880. The Court also notes that Plaintiff's allegations regarding MERS are irrelevant because MERS is not a party to this action, nor does Plaintiff allege that MERS was ever a party to any of her deeds of trust. *See* Compl. ¶ 120; Mot. at 4.

United States District Court
Northern District of California

1    Finally, to the extent that this cause of action intends to challenge the propriety of securitization

2    generally, the Court notes that "[t]heories that securitization undermines the lender's right to

3    foreclose on a property have been rejected by the courts." *See McGough v. Wells Fargo Bank,*

4    *N.A.*, C12-0050 TEH, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012)) (citing *Sami v. Wells*

5    *Fargo Bank*, No. 12-cv-00108 DMR, 2012 WL 967051, at *4–*6 (N.D. Cal. March 21, 2012)

6    (some citations omitted).

7         Plaintiff's claims are based on fundamental misunderstandings of the law, and they are

8    time-barred. Thus, the Court finds that amendment would be futile. *See In re Vantive Corp.*, 283

9    F.3d at 1097. Accordingly, the first cause of action for "rescission, mistake, and void agreement"

10    is DISMISSED WITH PREJUDICE.

11       **B.**      **Fraudulent Inducement, Fraudulent Concealment, Intentional**

12               **Misrepresentation, and Negligent Misrepresentation**

13        The elements of fraud are "(a) a misrepresentation (false representation, concealment, or

14    nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable

15    reliance; and (e) resulting damage." *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294

16    (2005) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). Further, the heightened

17    pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure apply in federal court.

18    Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or

19    mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged

20    generally." Fed. R. Civ. P. 9(b). "It is well-established in the Ninth Circuit that both claims for

21    fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson*

22    *v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (quoting *Glen*

23    *Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999); *U.S.*

24    *Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1058 (N.D. Cal. 1991)).

25        Here, Plaintiff makes various arguments in its claims for fraudulent inducement, fraudulent

26    concealment, intentional misrepresentation, and negligent misrepresentation. As to the fraudulent

27    inducement claim, Plaintiff alleges that Wells Fargo's "predecessors in interest ha[d] exclusive

28    knowledge not accessible to Plaintiffs . . . pertaining to its mortgage lending activities that it did

not disclose to Plaintiff at the time it was entering into contracts with Plaintiff," such as "false appraisals, violation of underwriting guidelines, the intent to sell Plaintiffs' mortgage above their actual values to investors and knowledge that the scheme would result in a liquidity crisis that would gravely damage Plaintiff." Compl. ¶ 126. As to the fraudulent concealment claim, Plaintiff alleges that Wells Fargo "knew that within a foreseeable period, its investors would discover that mortgagors could not afford their loans and the result would be denial of government home preservation programs and foreclosures and ultimately, economic devastation" and that such information was hidden from "the public, including Plaintiff to Plaintiff's detriment." *Id.* ¶ 137–38. As to the intentional misrepresentation claim, Plaintiff alleges that Wells Fargo's "entire scheme was to sell loans to Plaintiff and immediately sell those loans to a trust, transferring the risk to investors" and that "Plaintiff at all times was wrongly induced to believe they were entering a lender/borrower relationship with a lender that would retain their loan." *Id.* ¶ 151. Plaintiff alleges that Wells Fargo accomplished this deception through a campaign of "misinformation and disinformation" described in the fraudulent concealment claim. *Id.* ¶ 152. Plaintiff also alleges that Wells Fargo represented to Plaintiff that it "would be assisted with a loan modification." *Id.* ¶ 159. As to the negligent misrepresentation claim, Plaintiff alleges that the misrepresentations described in the fraudulent concealment claim were false, and Wells Fargo intended for Plaintiff to rely upon them to induce her into entering into a loan contract. *Id.* ¶¶ 165–68.

Wells Fargo argues that Plaintiff's allegations are not pled with the requisite particularity because "Plaintiff does not describe the time, place, or specific content of the supposedly fraudulent representations." Mot. at 6. Wells Fargo also argues that Plaintiff does not allege any facts regarding her reasonable reliance on any statements. *Id.* Wells Fargo points out that to the extent she is alleging that she believed the loan would not be securitized, she was provided notice to the contrary by the express terms of the December 2005 deed of trust. *Id.* at 7, Ex. A. Wells Fargo also argues that the claims are time barred because, in California, such claims have a three-year statute of limitations. *Id.* (citing Cal. Civ. Proc. § 338(d)).

In her opposition, Plaintiff alleges that Wells Fargo "knew that the mortgage would be pooled and securitized and yet concealed the fact." Opp'n at 4. Plaintiff also argues that Wells

9

United States District Court
Northern District of California

Fargo engaged in "double dipping," which allegedly "occurs when a bank converts a mortgage into a security (unsecured debt) and receives the concurrent tax benefits of a REMIC and then attempts to also claim that it exits as a mortgage (secured debt)." *Id.* at 4–5. Further, Plaintiff argues that she is relieved from meeting the Rule 9(b) pleading standard because Wells Fargo concealed facts from her. *Id.* at 5. Plaintiff also alleges that she was never given a loan modification. *Id.*

The Court agrees with Wells Fargo. Plaintiff's fraud and misrepresentation claims fail because they fall far short of the Rule 9(b) pleading standard. As Wells Fargo points out, it is impossible to discern the time, place, or specific content of any representations, whether these are regarding Wells Fargo's alleged representations that it would not securitize or sell the loan, or that it would offer her a loan modification. The most specific allegations that the Court has identified—that statements were made "in public releases, on [Wells Fargo's] web site, in their literature and at their branch offices"—is still insufficient because of a lack of specificity. *See* Compl. ¶¶ 127, 131. For example, Plaintiff does not allege that she actually visited any web sites or branch offices, let alone when they were visited or what representations were made. Plaintiff is not excused from complying with Rule 9(b) simply because she argues, as a general matter, that Wells Fargo concealed facts.

To the extent that these claims are based on alleged representations by Wells Fargo that it would not securitize or sell the loan, these claims also fail because they are time-barred. *See Perez v. Am. Home Mortgage Servicing, Inc.*, C 12-00932 WHA, 2012 WL 1413300, at *4 (N.D. Cal. Apr. 23, 2012) (citing Cal. Code Civ. Proc. § 338(d)) (finding that where loan was executed in December 2006 and action was initiated in January 2012, statute of limitations precluded fraud claims). Additionally, Plaintiff does not allege sufficient facts to show that "double-dipping" occurred in this case, nor does she explain how she might have standing to challenge this practice.

The Court notes that a fraud claim based on a misrepresentation to forestall foreclosure or consider a loan modification application may be viable but, as currently pled, the Court cannot discern from the pleadings who made the misrepresentations, when the misrepresentations were made, or the contents of such misrepresentations, as required by Rule 9(b). *Cf., e.g., Rockridge Tr.*

*v. Wells Fargo NA*, Case No. 13-cv-1457 JCS, 2014 WL 688124, at *16 (N.D. Cal. Feb.19, 2014) (denying motion to dismiss claim for fraud where plaintiff alleged an oral misrepresentation that, in light of a pending loan modification application, lender would postpone a foreclosure sale by a specific person on a specific day).

Accordingly, the second, third, fourth, and fifth causes of action for fraudulent inducement, fraudulent concealment, intentional misrepresentation, and negligent misrepresentation are DISMISSED WITH LEAVE TO AMEND. Any amendments to these claims must satisfy the heightened pleading standard of Rule 9(b).

### C.  Injunctive Relief for Violation of Cal. Civil Code § 2923.5

Section 2923.5 of the California Civil Code provides certain requirements related to the recording of notices of default. *See* Cal. Civ. Code § 2923.5.

Plaintiff seeks injunctive relief under section 2923.5 of the California Civil Code based on her allegation that Wells Fargo was prohibited from recording a notice of default without first contacting Plaintiff. Compl. ¶¶ 165–71. The alleged notice of default is not attached to the Complaint. Plaintiff alleges that she is entitled to injunctive relief as set forth in the California Homeowner Bill of Rights. *See id.* ¶ 179.

Wells Fargo argues that no notice of default was ever recorded and that injunctive relief is not a claim. Mot. at 7 (citing *Caovilla v. Wells Fargo Bank, N.A.*, No. 13-cv-1003 JSC, 2013 WL 2153855, at *7 (N.D. Cal. May 16, 2013)) (some citations omitted)).

In her opposition, Plaintiff points to a letter from Wells Fargo to Plaintiff informing her that her loan is in default. *See* Opp'n at 6, Ex. A. This letter explains the steps that Plaintiff would need to take to avoid acceleration and foreclosure proceedings. *See id.* Ex. A.

The Court agrees with Wells Fargo. The document that Plaintiff identifies as the notice of default is plainly not a notice of default under section 2923.5. It is merely a letter from Wells Fargo that warns Plaintiff of the possibility of eventual foreclosure which, if it occurs, will likely involve a formal recording of a notice of default. There is no indication that this letter has been recorded and, without a recordation, section 2923.5 is inapplicable. *See, e.g.*, Cal. Civ. Code § 2923.5(a)(1) ("mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not

United States District Court
Northern District of California

11

1    *record* a notice of default pursuant to Section 2924 until" certain requirements are met) (emphasis

2    added).

3           The Court finds that amendment would be futile. *See In re Vantive Corp.*, 283 F.3d at

4    1097. Accordingly, the sixth cause of action for "injunctive relief for violation of Cal. Civil Code

5    § 2923.5" is DISMISSED WITH PREJUDICE.

6           **D.      Violation of Cal. Bus. & Prof. Code § 17200 *et seq.***

7           The California Unfair Competition Law ("UCL") prohibits "unfair competition," which is

8    defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code

9    § 17200. To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation

10   of money sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the

11   economic injury was the result of, *i.e., caused by*, the unfair business practice . . . ." *Lawther v.*

12   *OneWest Bank, FSB*, No. C-10-00054 JCS, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012)

13   (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)) (emphasis in original).

14          Here, Plaintiff alleges that Wells Fargo's actions violated California's Unfair Competition

15   Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by

16           implementing, perpetrating and then extending their fraudulent scheme of inducing
             Plaintiff to purchase mortgage [sic] for which [she was] not truly qualified based on the
17           inflated property valuations and undisclosed disregard of their own underwriting standards
             and the sale of overpriced collateralized mortgage pools while taking the Plaintiff['s]
18           down-payment and costing Plaintiff her equity in her homes and other damages, violates
             [sic] numerous federal and state statutes and common law protections enacted for
19           consumer protection, privacy, trade disclosure, and fair trade and commerce.
20

21   Compl. ¶ 181. Plaintiff also alleges that she is "entitled to the issuance of a temporary restraining

22   order, a preliminary injunction, and a permanent injunction restraining and enjoining [Wells

23   Fargo] from any further concealment with respect to the Sale of NOTES and mortgages, or from

24   any further acts of misconduct of the kind alleged herein." *Id.* ¶ 188 (capitalization in original).

25   Plaintiff also alleges that Wells Fargo engaged in improper "robo-signing" as to the loan

26   origination in December 2005 and the Assignment to HSBC in April 2013. *Id.* ¶ 189. Plaintiff

27   seeks $200,000 in "restitution," including "interests payments [sic] made by Plaintiff, fees paid to

28   [Wells Fargo], excessive fees paid at [Wells Fargo's] demand, premiums received upon selling the

1   mortgages at an inflated value and moneys received from government agencies for 'losses'

2   incurred by [Wells Fargo]." *Id.* ¶ 187.

3       Wells Fargo argues that the UCL claim fails because it is derivative of other failing claims.

4   Mot. at 10. Wells Fargo also argues that Plaintiff fails to plead damages and, as a result, she has no

5   standing to pursue an UCL claim. *Id.* (citing Cal. Bus. & Prof. Code § 17204).

6       In her opposition, Plaintiff argues that she does have standing to bring a UCL claim

7   because she suffered injury by "purchas[ing] a mortgage for which she was not truly qualified for

8   based the [sic] inflated property valuations and undisclosed disregard of [Wells Fargo's]

9   underwriting standards . . . ." Opp'n at 7.

10      The Court agrees with Wells Fargo. Here, all of Plaintiff's other claims are dismissed for

11   failure to state a claim and, as a result, the UCL claim also fails. The UCL claim fails for the

12   additional reason that Plaintiff fails to plausibly plead damages. Plaintiff seeks "restitution" of up

13   to $200,000 but this is not supported by any factual allegations that make this amount plausible.

14   As to the robo-signing argument, the Court notes that courts in this district "have consistently

15   refused to find that a plaintiff can state a claim on the basis of a conclusory allegation of robo-

16   signing, absent some factual support." *Baldoza v. Bank of America, N.A.*, C-12-05966 JCS, 2013

17   WL 978268, at *13 (N.D. Cal. Mar. 12, 2013) (collecting cases).

18      Accordingly, the seventh cause of action for violation of the UCL is DISMISSED WITH

19   LEAVE TO AMEND.

20   **E.   Breach of Contract**

21      The elements of a cause of action for breach of contract are: (1) the existence of the

22   contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the

23   defendant; and (4) damages. *First Comm. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745, (2001).

24   To allege the existence of a contract, a plaintiff must plead mutual assent, sufficiently definite

25   contractual terms, and consideration. *See* Cal. Civ. Code § 1550.

26      Here, Plaintiff alleges that Wells Fargo breached contracts that it had entered into with the

27   United States; namely, contracts created by the acceptance of Troubled Asset Relief Program

28   ("TARP") funds. Compl. ¶ 198. Plaintiff alleges that under these alleged contracts with the United

13

1   States, Plaintiff is a third-party beneficiary and that Wells Fargo is obligated to modify Plaintiff's

2   loan. *Id.* ¶¶ 199–200. Plaintiff alleges that Wells Fargo breached these contracts, causing Plaintiff

3   "equal to or less than $200,000." *Id.* ¶¶ 201–202. Plaintiff alleges that she will be able to discover

4   that her note and deed of trust were not transferred to a Pooling and Servicing Trust within "the

5   required 90 days of opening and closing of the various trust [sic] including . . . The Wells Fargo

6   Mortgage Backed Securities Certificate 2006-AR10." *See* ¶ 222.

7        Wells Fargo argues that Plaintiff is not a third-party beneficiary to any alleged contract

8   between Wells Fargo and the United States. Mot. at 11. Wells Fargo argues that similar arguments

9   have been dismissed by other courts. *Id.* (citing *Maguca v. Aurora Loan Servs.*, No. SACV 09-

10  1086 JVS (ANx), 2009 WL 3467750, at *3 (C.D. Cal. Oct. 28, 2009); *Kamp v. Aurora Loan*

11  *Servs.*, No. SACV 09-00844-CJC(RNBx), 2009 WL 3177636, at *4 (C.D. Cal. Oct. 1, 2009)).

12       In her opposition, Plaintiff insists that she is a third-party beneficiary to the alleged

13  contracts, and that "[i]t does not matter that similar claims have been rejected on this basis."

14  Opp'n at 7. Plaintiff argues that "what matters is that this claim will not be labeled as 'nonsensical

15  and baseless' because it has merit." *Id.* She argues that "[m]ost banks did what they were obligated

16  to do," but Wells Fargo did not. *Id.* at 8. Plaintiff argues that "Wells Fargo is a large entity and

17  could very well afford to help their customers by affording them and not depriving Plaintiff of her

18  rights under the legislative government programs." *Id.*

19       The Court agrees with Wells Fargo. Plaintiff's policy arguments are inapposite to the

20  Court's task at hand, which is to determine whether the claims made in the Complaint are legally

21  sufficient to survive the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil

22  Procedure. The Court concludes that Plaintiff has failed to allege plausibly that such contracts

23  between Wells Fargo and the United States exist and, even if they do, Plaintiff's allegation that

24  she is a third party to such contracts is not plausible on its face. *See Iqbal*, 556 U.S. at 663.

25       Additionally, to the extent that Plaintiff may be trying to allege that the Assignment of the

26  note and deed of trust violated a pooling and servicing agreement or some other contract, courts

27  have consistently rejected this argument when borrowers cannot show that they are parties or

28  third-party beneficiaries to the agreement. *See, e.g.*, *Bergman v. Bank of Am.*, C-13-00741 JCS,

United States District Court
Northern District of California

14

2013 WL 5863057, at *16–*17(N.D. Cal. Oct. 23, 2013) (citing *Aniel v. GMAC Mortg., LLC*, No. C 12–04201 SBA, 2012 WL 5389706, at *4 (N.D. Cal. Nov. 2, 2012)) (some citations omitted) ("the majority position is that plaintiffs lack standing to challenge noncompliance with a pooling and service agreement or other similar agreement unless they are parties to the agreement or third party beneficiaries thereto").

Plaintiff's Complaint and her reply fail to provide any factual allegations that "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 545. It is apparent to the Court that Plaintiff cannot cure the fact that she is not a third-party beneficiary to any alleged agreements between Wells Fargo and the United States, and amendment would be futile. *See In re Vantive Corp.*, 283 F.3d at 1097. Accordingly, the eighth cause of action for breach of contract is DISMISSED WITH PREJUDICE.

### F.    Slander of Title

The required elements of a claim for slander of title are "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Sumner Hill Homeowners' Ass'n Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012). "Direct pecuniary loss" is restricted to:

> (a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and (b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

*Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812-PVT, 2007 WL 4577867, at *12 (N.D. Cal. Dec. 27, 2007) (quoting *Appel v. Burman*, 159 Cal. App. 3d 1209, 1215 (1984); Rest. 3d Torts § 633).

Here, Plaintiff alleges that Wells Fargo slandered title to the Property when it recorded a notice of default against the Property. Compl. ¶ 206. Plaintiff alleges that such recording was with malice, and that it has impaired her credit and vendibility of the Property. *Id.* ¶¶ 206–207.

Wells Fargo argues that no notice of default has been recorded at all. Mot. at 11. Wells Fargo further argues that even if a notice had been recorded, such conduct would be privileged. *Id.* at 11–12 (citing Cal. Civ. Code §§ 47(c)(1), 2924(d)) (some citations omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In her opposition, Plaintiff argues that a notice of default "was mailed against the property and that is what prompted Wells Fargo to finally record the Substitution of Assignment." Opp'n at 8.

The Court agrees with Wells Fargo. A notice of default has not been recorded, and this alleged basis for relief fails. To the extent that the letter sent by Wells Fargo to Plaintiff regarding potential acceleration and foreclosure proceedings is a publication, Plaintiff has not alleged plausibly that Wells Fargo acted with malice. Moreover, Plaintiff has failed to allege prejudice. Plaintiff does not appear to dispute that she is in default on her loan. Plaintiff's allegations of impaired credit and vendibility fail because she does not allege any facts to support these "bare assertion[s]." *See Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) (dismissing slander of title claim in foreclosure context for failure to make proper allegations of, *inter alia*, pecuniary harm based on impaired vendibility); *Cerezo v. Wells Fargo Bank, N.A.*, 13-1540 PSG, 2013 WL 4029274, at *6 (N.D. Cal. Aug. 6, 2013) (dismissing slander of title claim for failure to make proper allegations of, *inter alia*, pecuniary harm based on impaired vendibility because plaintiffs had not alleged existence of any impending sale).

Accordingly, the ninth cause of action for slander of title is DISMISSED WITH LEAVE TO AMEND.

### G.      Declaratory Relief

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such a declaration," but only if there is an actual controversy between the parties in the court's jurisdiction. 28 U.S.C. § 2201(a); *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th Cir.2005).

Here, Plaintiff seeks a declaration that Wells Fargo does not have standing to foreclose upon the Property because it has "improperly prepared, separated, lost or destroyed, and then subsequently falsified the assignments of the notes thereby calling into question the validity of the expected interest in the security of the claimed note holder." Compl. ¶¶ 210–11. Plaintiff argues that "[a] party seeking to foreclose bears the burden of demonstrating standing and must plead its

components with specificity and must demonstrate that it was the holder and owner" of the loan and deed of trust." *Id.* ¶ 213.

Wells Fargo argues that Plaintiff's claim fails because there is no "actual controversy" between the parties. Mot. at 7 (citing 28 U.S.C. § 2201(a)) (some citations omitted). Wells Fargo further alleges that the alleged securitization of Plaintiff's loan is not relevant to non-judicial foreclosure. Mot. at 9 (citing *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010)) (some citations omitted).

In her opposition, Plaintiff does not provide any substantive argument on this claim. Rather, she repeats that she seeks a declaration that Wells Fargo "may not foreclose or deny governmental programs on the loan due to the alleged securitization and improper assignment of the loan." Opp'n at 6.

The Court generally agrees with Wells Fargo. A notice of default has not been recorded, and this alleged basis for relief fails. Further, Plaintiff's claim for declaratory relief is based on the allegation that Wells Fargo lacks standing to foreclose upon the Property. *See* Compl. ¶ 210. This allegation is duplicative of Plaintiff's challenges to the propriety of securitization generally, which the Court has already noted have been consistently rejected by the courts. *See* Part. V.A., *supra*. *See, e.g.*, *McGough*, 2012 WL 2277931, at *4; *Sami*, 2012 WL 967051, at *4–*6. Plaintiff relies on *Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, at *7 (E.D. Cal. Nov. 17, 2011), for the proposition that a plaintiff has standing to challenge foreclosure based on allegations that an assignment was executed after the closing date of the securities pool. *See* Compl. ¶ 229. However, as Wells Fargo correctly points out, that case represents the minority position. *See* Mot. 9; *Bergman*, 2013 WL 5863057, at *16–*17 (explaining that *Vogan* represents minority position). Thus, Plaintiff has not sufficiently alleged an actual controversy that would entitle him to declaratory relief. *See Karimi v. GMAC Mortgage*, 11-CV-00926-LHK, 2011 WL 5914006, at *6 (N.D. Cal. Nov. 28, 2011) (citing *Permpoon v. Wells Fargo Bank Nat'l Ass'n*, No. 09-CV-01140-H (BLM), 2009 WL 3214321, at *5 (S.D. Cal. Sept. 29, 2009)) (dismissing declaratory judgment claim where claim was duplicative of other invalid claims)).

///

United States District Court
Northern District of California

United States District Court
Northern District of California

### H.     Promissory Estoppel

A claim for promissory estoppel requires: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).

Here, Plaintiff alleges that Wells Fargo is "trying to foreclose on Plaintiffs' property via non-judicial process even though Defendants do not have standing and have not demonstrated the proper chain of title to do so" because the loan has been securitized. *See* Compl. ¶ 239. Plaintiff also alleges that Wells Fargo did not comply with the foreclosure requirements of sections 2923.5, 2924, and 2932.5 of the California Civil Code and therefore it lacks standing to foreclose. *Id.* Plaintiff alleges that "[a]s a proximate result of the misrepresentations by Wells Fargo . . . Plaintiff has been threatened with the loss of her home and her credit ratings have been diminished." *Id.*

Wells Fargo construes Plaintiff's claim as one based on an alleged forbearance agreement and representation that Plaintiff would be offered a loan modification if she complied with the trial terms. *See* Mot. at 12, 12 n.12 (citing Compl. ¶ 245). Wells Fargo argues that Plaintiff has not sufficiently pled the terms of any alleged promise, nor does she allege justifiable reliance or injury. *See* Mot. at 13. Wells Fargo points out that Plaintiff received a "temporary modification" and that Plaintiff argues only that she did not receive a second modification after the loan was sold. *See* Def.'s Reply at 6.

In her opposition, Plaintiff alleges that she was "offered a forbearance agreement and told that a modification would be offered is [sic] she complied with trial terms." Opp'n at 8–9. She alleges that "[o]nly a temporary modification was granted and Wells Fargo specifically stated that they do not have the authority to grant permanent modifications because they only service the loan," and that "[t]his [wa]s not the contract" that she agreed to. *See* Opp'n at 8. Plaintiff alleges that she participated fully in the loan modification application process and Wells Fargo would lead her to believe that a modification was possible, only to disappoint her by saying that it had no contractual authority to modify the loan because of investor guidelines. *See id.* at 10.

The Court agrees with Wells Fargo. Although it is not entirely clear, Plaintiff appears to be

1    making two separate arguments. First, to the extent that the promissory estoppel claim relies on

2    Wells Fargo's alleged promise that it would not sell or securitize Plaintiff's loan, this argument

3    fails because Plaintiff has not alleged plausibly that such a promise was made, or how she

4    reasonably relied on such a promise.

5        Second, Plaintiff also appears to allege that Wells Fargo made misrepresentations to her

6    regarding an offer for a permanent loan modification, despite the fact that it did not actually have

7    the ability to grant a permanent loan modification. The Court notes that a promissory estoppel

8    claim based on a promise to forestall foreclosure or consider a loan modification application may

9    be viable but, as currently pled, the Court cannot discern from the pleadings who made the

10   promises, when the promises were made, or why any reliance on such promises was reasonable.

11   *Cf., e.g.*, *Rockridge Tr.*, 2014 WL 688124, at *16 (denying motion to dismiss plaintiff's claim for

12   promissory estoppel where plaintiff alleged an oral promise to postpone a foreclosure sale by a

13   specific person on a specific day).

14       Accordingly, the eleventh cause of action for promissory estoppel is DISMISSED WITH

15   LEAVE TO AMEND. Any amendment to this claim should identify which individuals made the

16   alleged promises, when these promises were made, the content of these promises, and how

17   Plaintiff reasonably relied on such promises.

18            **I.    Breach of Implied Covenant of Good Faith and Fair Dealing**

19       "There is implied in every contract a covenant by each party not to do anything which will

20   deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App.

21   2d 405 (1960). However, "[w]here there is no underlying contract there can be no duty of good

22   faith arising from the implied covenant." *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th

23   798, 804 (1999).

24       Here, Plaintiff appears to allege that she entered into an oral contract with Wells Fargo to

25   modify her loan. Compl. ¶ 244. Plaintiff alleges that "in reliance of this offer," she entered into a

26   forbearance agreement with Wells Fargo and that she was told that a modification would be

27   offered if she complied with the trial terms. *Id.* ¶ 245. Plaintiff alleges that she and Wells Fargo

28   "made new promises which were separate and beyond the promises in the original contract." *Id.*

United States District Court
Northern District of California

19

¶ 247. Specifically, Plaintiff alleges that after she and Wells Fargo "reached an agreement that Plaintiff[']s loans would be modified if [she] complied with trial period plan [sic], Plaintiff expended time and energy and made financial disclosures in furtherance of the agreement, which [she] was not required to under the original contract." *Id.* Plaintiff alleges that "after receiving a temporary modification and a repayment plan, Defendants informed Plaintiff they did not have the authority to offer any permanent modification because Wells Fargo . . . w[as] on the servicer of her loan and according to investor guidelines of the PSA, there were restrictions on these types of options." *Id.* Plaintiff alleges that in expending this additional effort, she provided an additional benefit to Wells Fargo by making it "potentially eligible for incentive payments from the federal government for pretentiously [sic] modifying loans." *Id.* ¶ 248. Plaintiff alleges that despite her efforts, Wells Fargo refused to modify her loan in good faith. *Id.* ¶¶ 254–55.

Wells Fargo argues that Plaintiff has failed to plead the existence of a contract provision that was frustrated, as required. *See* Mot. at 14. Wells Fargo further argues that to the extent that this claim is based on an alleged oral contract, it is not clear when the promise occurred or what was promised. *See id.* at 15. Wells Fargo points out that the Loan Modification Agreement that it entered into with Plaintiff in December 2009 specifically advised her that subsequent oral agreements were unenforceable. *Id.*; Compl. Ex. C at 6.

In her opposition, Plaintiff alleges that on many occasions, she has "written to Wells Fargo and filled out all necessary paperwork as a requirement for Mortgage Assistance." Opp'n at 10. She alleges that "[i]n the beginning, [Wells Fargo] did not tell Plaintiff her home was owned by anyone else besides Wells Fargo" and "[o]nly upon seeking mortgage assistance, then Plaintiff was told she did not qualify for these governmental programs because her loan is owned by a pool of investors who according to the investor guidelines will not allow you these options." *Id.*

The Court generally agrees with Wells Fargo. Plaintiff has failed to identify with particularity the contract provision that was frustrated by Wells Fargo's behavior. Plaintiff fails to allege plausibly any agreements to offer a permanent loan modification, whether written or oral.

First, Plaintiff does not allege plausibly the existence of any written agreement that Plaintiff would receive a permanent loan modification if she made compliant payments. Both the

United States District Court
Northern District of California

1  August 2009 and the July 2011 Special Forbearance Agreements expressly state that Wells Fargo

2  was "under no obligation to enter into any further agreement, and this forbearance shall not

3  constitute a waiver of the lender's right to insist upon strict performance in the future." Compl.

4  Exs. C at 1–2, D at 3. The December 2009 Loan Modification Agreement, which both parties

5  appear to agree was validly executed, is silent as to any permanent modification and it contains a

6  provision that any contemporaneous or subsequent oral agreements are invalid. *See* Compl. Ex. C

7  at 3–6; Mot. at 15 (Wells Fargo referring to Loan Modification Agreement as executed

8  agreement). The Court notes that a breach of the implied covenant of good faith and fair dealing

9  claim based on a written promise to offer a loan modification may be viable but, as currently pled,

10  no written terms appear to give rise to such a promise. *Cf., e.g., Corvello v. Wells Fargo Bank, NA*,

11  728 F.3d 878, 883 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013) (holding that

12  bank was contractually obligated under express terms of trial payment plan ("TPP") to offer a

13  permanent loan modification to borrowers who complied with TPP).

14       Second, Plaintiff does not allege plausibly the existence of any oral agreement that

15  Plaintiff would receive a permanent loan modification if she made compliant payments. It is

16  impossible to determine when any underlying contract was formed, who formed it, or the contents

17  of such a contract. The Court notes that a breach of the implied covenant of good faith and fair

18  dealing claim based on an oral agreement to offer a loan modification may be viable but, as

19  currently pled, the Court cannot discern any particular conversations that would give rise to such

20  promises. *Cf., e.g., Rockridge Tr.*, 2014 WL 688124, at *14 (denying motion to dismiss claim for

21  breach of implied covenant of good faith and fair dealing where plaintiff alleged oral contracts

22  formed by specific people on specific days in which plaintiff would make monthly payments and

23  submit financial information, and borrower promised to consider plaintiff's loan modification

24  application).

25       Accordingly, the twelfth cause of action for breach of the implied covenant of good faith

26  and fair dealing is DISMISSED WITH LEAVE TO AMEND. Any amendment to this claim

27  should identify the contractual provisions that were frustrated by Wells Fargo's actions, as well as

28  the time, place, and individuals involved in the creation of any oral contracts.

United States District Court
Northern District of California

### J.   Institutional Bad Faith

Plaintiff alleges that Wells Fargo committed institutional bad faith that "amounts to reprehensible conduct because the conduct is part of a repeated pattern of unfair practices . . . and not an isolated occurrence." Compl. ¶¶ 257–58. Plaintiff alleges that Wells Fargo "acted with actual malice by engaging in this Institutional Bad Faith, failing to cure the same, and concealing the magnitude of the problem." *Id.* ¶ 261. Plaintiff seeks punitive damages. *Id.* ¶ 262.

Wells Fargo argues that institutional bad faith is not a cause of action. Mot. at 15 (citing *Taft v. Am. Mut. Ins. Co.*, No. CV-11-2599-PHX-SMM, 2013 WL 5498226, at *6 (D. Ariz. Oct. 1, 2013) (declining to recognize institutional bad faith as cause of action in Arizona). In her opposition, Plaintiff does not provide any argument or authority to the contrary. *See* Opp'n at 11.

The Court agrees with Wells Fargo. Institutional bad faith appears to be a concept used in litigation involving the Internal Revenue Service. *See, e.g.*, *United States v. Dahlstrum*, 493 F. Supp. 966, 971 (C.D. Cal. 1980) (discussing application of institutional bad faith defense to enforcement of Internal Revenue Service summons). Plaintiff has not identified any authority supporting the proposition that institutional bad faith is a cause of action in California.

This claim is based on a fundamental misunderstanding of the law and, as a result, it cannot be cured by amendment. *See In re Vantive Corp.*, 283 F.3d at 1097. Accordingly, the thirteenth cause of action for "institutional bad faith" is DISMISSED WITH PREJUDICE.

### VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is DISMISSED in its entirety with leave to amend as described above. Any amended complaint must be filed within thirty days. If an amended complaint is not filed, the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: May 6, 2014

JOSEPH C. SPERO
United States Magistrate Judge

22